NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK C. CARROLL, | CIVIL ACTION NO. 10-170 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| CITY OF NEW BRUNSWICK, et al., | |
| Defendants. | |

**COOPER, District Judge**

Plaintiff, Frank C. Carroll ("plaintiff"), also listed as Frank C. Carroll, III, commenced this action against, among others, defendants the City of New Brunswick, Officer Michael DeBonis ("DeBonis"), and Police Director Anthony Caputo ("Caputo"), alleging, inter alia: (1) under 42 U.S.C. § ("Section") 1983 that those defendants violated his First, Fourth, Fifth, Thirteenth, and Fourteenth Amendment rights; and (2) various state law causes of action. (See dkt. entry no. 42, Second Am. Compl.)  Defendants Caputo and the City of New Brunswick moved for summary judgment in their favor and against plaintiff pursuant to Federal Rule of Civil Procedure ("Rule") 56. (See dkt. entry no. 53-1, Caputo & City Mot. for Summ. J.; dkt. entry no. 53-5, Caputo & City Br.)  Defendant DeBonis separately moved for summary judgment in his favor.  (See dkt. entry no. 54, DeBonis Mot. for Summ. J.)  Plaintiff opposes both motions.  (See dkt. entry no. 57-3, Pl.'s Br. in Opp'n to Summ. J.)  For the reasons that follow, the separate motions will be granted as to the federal law claims and denied as to the state law claims, with the state law claims dismissed without prejudice.

## I. PROCEDURAL NOTES

### A. City of New Brunswick Police Department

The City of New Brunswick Police Department was originally named by plaintiff as a defendant, but was not named in the subsequently-filed amended complaints. (Compare dkt. entry no. 1, with dkt. entry no. 9, Am. Compl., and Second Am. Compl.)  The Court will direct the Clerk of the Court to mark that party as terminated from the action.

### B. Claims Concerning Incident of September 2, 2008

Plaintiff has withdrawn his claims concerning an incident that occurred on September 2, 2008. (See dkt. entry no. 47, "Partial Voluntary Stipulation of Dismissal, With Prejudice, as to All Claims concerning the September 2, 2008 Incident as to All Defendants including Detective John Quick"; see also dkt. entry no. 53-4, Caputo & City Statement of Facts at 4 (acknowledging same).)  The Court will therefore not address these claims.

### C. Detective John Quick

Plaintiff has withdrawn his claims concerning defendant Detective John Quick. (See dkt. entry no. 31, Stip.; dkt. entry no. 48, Stip.)  The Court will therefore not address these claims.

### D. Richard Basset

Plaintiff has failed to either serve, or prosecute this action against, Defendant Richard Basset ("Basset"), who is identified as a manager at Hotoke Restaurant ("Hotoke"). (See Second Am. Compl. at ¶ 12.)  See Fed.R.Civ.P. 4(m); L.Civ.R. 41.1(a).  Furthermore, Plaintiff is barred from asserting claims under Section 1983 against a private actor.  See Boyd v. Pearson, 346 Fed.Appx. 814, 816 (3d Cir. 2009) (affirming district court's dismissal of complaint where defendant was not state actor).  Section 1983 does not cover merely private conduct, no matter how wrongful.  See St.

2

Croix v. Etenad, 183 Fed.Appx. 230, 231 (3d Cir. 2006). The Court will therefore dismiss any federal claims asserted against Basset.

## II.     BACKGROUND

Plaintiff contends that "[f]or a period of at least four years prior to 2007, [he] ha[s] been continually harassed by members of the New Brunswick Police Department," including "unwarranted motor vehicle stops, unwarranted stop and frisks, efforts to illegally search his home and property." (See Second Am. Compl. at ¶ 17.) Plaintiff's contentions then specifically center on the following encounters with defendants.

### A.     May 30, 2007

Plaintiff alleges that on May 30, 2007, he received a telephone call from the New Brunswick Police Department requesting that he come to police headquarters to "be served with a restraining order . . . allegedly filed against him by a former girlfriend." (Id. at ¶ 18.) Plaintiff claims that when he arrived at the police station, a warrant was not produced and "no such warrant existed." (Id. at ¶ 19.) He further states that the police informed him that his vehicle and residence needed to be searched, but he declined consent and asked to see a search warrant. (Id.) Plaintiff contends that he was then informed by the officers that there was an outstanding arrest warrant out for him, at which point he was "arrested, processed and sent to county jail," where he was held for seven hours and released. (Id. at ¶¶ 20, 21.) Plaintiff claims that he was "never served with any complaints regarding any illegal or improper behavior." (Id. at ¶ 21.) Plaintiff later alleged in his answers to interrogatories that upon his release, he learned that while he was in county jail, "the police took my keys and searched my house and car." (See dkt. entry no. 57-2, Pl. Certifications, Ex. F at 7.)

**B.     February 20–21, 2008**

Plaintiff states that in February 2008, he negotiated a contract with Hotoke to hold a "Documentary Release Party" on the restaurant premises in New Brunswick, New Jersey to take place on February 21, 2008.  (Id. at ¶ 24.)  In order to secure the venue, plaintiff paid a deposit to the owner of the restaurant, Woody Patel.  (Id.)  Plaintiff raised $10,000 for the party from friends and planned to charge his guests $20 per person for entrance to the party.  (See Pl. Certifications, Ex. B at 18–19.)  He planned to keep the profits from the event.  (Id.)  Plaintiff alleges that on February 19, 2008, Patel informed him that defendant DeBonis, a detective with the New Brunswick Police Department, "threatened to close down the restaurant if the owner moved forward with the event."  (Second Am. Compl. at ¶ 26.)[1]

DeBonis's job required him to enforce the state's Alcoholic Beverage Control ("ABC") liquor regulations, according to the statutes laid out in the ABC Handbook.  DeBonis explained to Hotoke management that due to plaintiff's criminal history, plaintiff could not hold an event at the restaurant and collect money for it, as he would be considered an employee.  Under ABC rules, establishments with liquor licenses cannot employ individuals with criminal records unless they seek a waiver.  Hotoke had not sought a waiver for plaintiff's event.

Plaintiff alleges that he and his business partner, Brian Braxton, spoke to DeBonis upon receiving this information from Patel.  (Id. at ¶ 27.)  According to plaintiff, DeBonis, when asked by

---

[1] The Court has resolved a date discrepancy in the second amended complaint, concluding that the events described in paragraphs 25–31 must have occurred on February 19, 2008, two days prior to the scheduled event on February 21, 2008.  This conclusion is based on plaintiff's statements in paragraphs 31–33, claiming that he scheduled a meeting with Hotoke management for "the next day, February 20, 2008 at 1:00 p.m."  (See Second Am. Compl. at ¶ 31.)  At the meeting on February 20, the Hotoke management canceled plaintiff's event "the day before it was to occur."  (Id. at ¶¶ 32–33.)

4

plaintiff if he planned to shut down the event "admitted that he did." (Id. at ¶ 28.) Plaintiff further states that DeBonis told him that he needed to go back to the "hood" to hold events. (Id. at ¶ 29.) At this point, plaintiff claims that he did not respond, instead choosing to leave and speak with Hotoke's general manager, Basset. (Id. at ¶ 30.) Plaintiff scheduled a meeting with Braxton, Basset, and Patel for the next day, February 20, 2008 at 1PM. (Id. at ¶ 31.)

Plaintiff states that at the meeting, Patel informed him "he had no choice but to cancel [plaintiff's] event, after being harassed and threatened by Detective DeBonis." (Id. at ¶ 32.) Thus, Hotoke management canceled plaintiff's event and refunded his $4000.00 deposit the following day, February 21st. (Id. at ¶¶ 33, 34.) Plaintiff claims that when he picked up the check, Basset said: "'You're not wanted here. We don't want your kind around here, and don't come back!'" (Id. at ¶ 35.) As a result, Plaintiff refused to accept the check and a verbal altercation ensued. (Id. at ¶ 36.) Police responded to the incident, and plaintiff accepted the check, with plaintiff claiming that Basset repeated the same remarks, in police presence, again. (Id. at ¶¶ 38, 39.)

### III.  SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56, which provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 331 (1986). In response, "the nonmoving party [must] go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Material facts are those "that could affect the outcome" of the

5

proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) and Celotex Corp., 477 U.S. at 322-23). Summary judgment is "proper if, viewing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." United States ex rel. Kosenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009).

## IV. LEGAL PRINCIPLES AND DISCUSSION

Plaintiff alleges, under Section 1983, that defendants violated his rights as set out under the First, Fourth, Fifth, Thirteenth, and Fourteenth Amendments of the United States Constitution. (See Second Am. Compl. at ¶ 48.)

### A. Federal Claims Under 42 U.S.C. § 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not, however, provide substantive rights. Baker v. McCullan, 443 U.S. 137, 144–45 (1979). Instead, it is a vehicle for individuals to vindicate the deprivation of their federal rights by state action. Id.

Two initial elements must be established by a plaintiff seeking to prevail on a Section 1983 claim: "(1) whether the conduct complained of was committed by a person acting under color of

state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Adkins, 487 U.S. 42, 49 (1988) (citing United States v. Classic, 313 U.S. 299, 326 (1941)). Further, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id.

Plaintiff alleges violations of five constitutional amendments. (See Second Am. Compl. at ¶ 48.) The Court will consider each in turn.

    **1.    First Amendment**

The First Amendment "protects freedom of expression regardless of its content or viewpoint and 'regardless of whether it is disruptive, offensive, vulgar or insulting.'" In re Kendall, 712 F.3d 814, 825 (3d Cir. 2013) (quoting J.S. v. Blue Mountain Sch. Dist., 650 F.3d 915, 936 (3d Cir. 2011)). First Amendment jurisprudence, however, allows for limited restrictions on freedom of expression that vary based on the location and content of the speech affected by the restrictions.

Plaintiff claims that defendants violated his First Amendment rights when they "forced the cancellation of my Documentary Release party scheduled to occur at Hotoke." (See Pl. Certifications, Ex. F at 10.) He alleges it "was done due to my race and in an effort to suppress my ability to [h]old my event, which was a form of expression." Id.

Plaintiff has not established a viable First Amendment claim that would allow a reasonable jury to find in his favor even when viewing the facts in the light most favorable to him. First, none

7

of the defendants canceled plaintiff's event at Hotoke. DeBonis's job tasked him with enforcement of the ABC statutes and regulations. In performing such duties, DeBonis interpreted the statutes, and informed Hotoke that due to plaintiff's criminal record, allowing him to host a for-profit event at the establishment would run afoul of the ABC regulations. The decision on allowing the event to proceed was then solely in the hands of Hotoke management. Second, plaintiff presents no evidence, aside from mere conclusory allegations, that defendants targeted his speech because of his race or his event because of its content. In the absence of such allegations, defendants' separate motions for summary judgment as to the First Amendment claim will be granted.

    **2.**    **Fourth Amendment**

The Fourth Amendment provides:

> [t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Am. IV. In order to state a claim under the Fourth Amendment, a plaintiff must first establish that he was "seized," requiring a demonstration of an "intentional acquisition of physical control." Brower v. Cnty. of Inyo, 489 U.S. 593, 597 (1989); see Graham v. O'Connor, 490 U.S. 386, 394 (1989); Tennessee v. Garner, 471 U.S. 1, 7–8 (1985). When government actors have, "by means of physical force or show of authority . . . in some way restrained the liberty of a citizen," they have seized that person for purposes of the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).

    Searches "conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few

8

specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). In the absence of consent or exigent circumstances as defined by the United States Supreme Court, police must seek a warrant prior to conducting a search of a person or property. See id.

### a. May 30, 2007 Allegations

Plaintiff alleges the events of May 30, 2007 involving the New Brunswick Police Department violated his Fourth Amendment rights. (See Pl. Certifications, Ex. F at 6–7.) Plaintiff alleges that when he was arrested, transported, and detained at the Middlesex County Adult Corrections Center ("MCACC") on May 30, 2007, after he went to the New Brunswick Police Department to receive paperwork for a restraining order. (See Pl. Certifications, Ex. F at 6–7.) Plaintiff then states that he believes that the New Brunswick Police Department searched his home and vehicle while he was allegedly incarcerated. (See id.) Plaintiff fails to identify the source of this information and does not claim any of his possessions were disturbed during these alleged searches. (See id.) Despite plaintiff's allegations, he produced no documents substantiating the restraining order, an outstanding warrant, his detention at MCACC, or the supposed searches. Defendants state that after searching their records, they cannot locate any documents to corroborate any of plaintiff's contentions. (See Caputo & City Br. at 16.) In the absence of any such corroborating evidence or documentation, the Court cannot allow these mere assertions to continue forward. Defendants' separate motions for summary judgment as to plaintiff's Fourth Amendment claims based on the May 30, 2007 events will be granted.

9

### b.     Statute of Limitations

Plaintiff filed the complaint on January 12, 2010—three years and eight months after these events allegedly occurred against plaintiff.  (See Second Am. Compl.)  In New Jersey, a two-year statute of limitations applies to personal injury actions for Section 1983 civil rights claims.  See Baker v. Wittenvrongel, 363 Fed.Appx. 146, 150 (3d Cir. 2010) (citing Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989); N.J.S.A. 2A:14-2).  Thus, even if a claim did lie here based on these events, the two-year statute of limitations would apply to bar this claim, insofar as it is based on events preceding and occurring on May 30, 2007, as untimely.

### 3.     Fourth, Fifth, and Fourteenth Amendments

The Fifth Amendment, as applied to States through the Fourteenth Amendment, requires that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Chavez v. Martinez, 538 U.S. 760, 766 (2003) (citing U.S. Const. Am. V; Malloy v. Hogan, 378 U.S. 1 (1964)) (emphasis omitted).  Plaintiff incorrectly cited the Fifth Amendment when claiming defendants violated his "rights to due process of law, including the right to be free from unjustified and excessive force utilized by police."  (See Second Am. Compl. at 12.)  Plaintiff was never charged with a criminal offense stemming from any of the incidents at issue here.  Thus, the Fifth Amendment is inapplicable to this case.  The Court will analyze plaintiff's due process claim under the Fourteenth Amendment, and his excessive force claim under the Fourth Amendment.

### a.     Due Process

The Fourteenth Amendment prohibits state deprivations of life, liberty, or property without due process of law.  Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984).  In order to establish a due process claim under Section 1983, a plaintiff must show that he was deprived of life,

10

liberty, or a property interest under the color of law and without due process.  Griffin v. Municipality of Kingston, 453 Fed.Appx. 250, 251–52 (3d Cir. 2011).

Plaintiff failed to establish any such seizure occurred on May 30, 2007.  As the Court already held, plaintiff's conclusory statements and bare assertions as to the events on this date do not warrant recovery against defendants.  The events surrounding plaintiff's party in February 2008 also fail to give rise to a due process violation.  DeBonis simply notified Hotoke management of the possible ABC violations that would occur if the event went forward, due to plaintiff's criminal history and his promotion of the party rendering him an "employee" of an establishment with a liquor license.  The restaurant could have applied for a waiver to allow plaintiff to hold his event, but failed to do so.  Instead, the restaurant canceled plaintiff's event and refunded his deposit money.  The Court finds no due process violation in the handling of this event.  Thus, the Court will grant defendants' separate motions for summary judgment as to all due process claims.

      **b.**    **Excessive Force**

The Fourth Amendment prohibition against excessive force by law enforcement stems from the ban against unreasonable seizures of persons.  Graham, 490 U.S. at 394–95.  "A plaintiff may bring a claim pursuant to Section 1983 where the police use more force than is necessary to arrest him."  Estate of Smith v. Marasco, 430 F.3d 140, 149 (3d Cir. 2005).  Thus, in order to establish a prima facie case of excessive force, a plaintiff must prove that he "(1) suffered some injury, which (2) resulted from force that was clearly excessive to the need of force, (3) the excessiveness of which was objectively unreasonable."  Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001).

Nowhere in any of plaintiff's pleadings or evidence does he allege or prove that he was subjected to excessive force that resulted in any type of injury or medical treatment, mental,

physical, or otherwise. The Court finds any such claim without merit and will grant defendants' separate motions for summary judgment as to plaintiff's excessive force claim.

### 4. Thirteenth and Fourteenth Amendments

The Thirteenth Amendment to the United States Constitution abolished slavery and involuntary servitude. U.S. Const. Am. XIII. Plaintiff's claims regarding equal protection incorrectly cite the Thirteenth Amendment. The Court will only consider the claims for equal protection under the Fourteenth Amendment.

The Fourteenth Amendment equal protection clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." Varriale v. Borough of Montvale, No. 04-199, 2006 WL 1806411, at *6 (D.N.J. July 29, 2006); U.S. Const. Am. XIV. A plaintiff must prove "the existence of purposeful discrimination" in order to state a prime facie claim for Section 1983 equal protection. Varriale, 2006 WL 1806411, at *6. In other words, a plaintiff must demonstrate that he received different treatment from similarly situated individuals. Id. The complaining party must first establish that he is similarly situated to a person being treated differently before the burden shifts to the other party to offer a justification for the difference in treatment. Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 137 (3d Cir. 2002).

Plaintiff's equal protection claim centers on his contention that he was targeted and treated unfairly due to his race before the February 2008 release party. (See Second Am. Compl. at 8–11.) His main evidence for this claim is the allegation that DeBonis made racially-charged comments to him: "you and your kind are not wanted downtown," "go back to the 'hood,'" and "when you come down here a red flag is going to go up." (See Pl. Certification, Ex. F at 7.) While DeBonis denies

12

making such statements, for the purposes of summary judgment, the Court will accept plaintiff's contentions as true.

Claims of verbal harassment, despite their violent or offensive nature, do not amount to a constitutional violation under Section 1983.  See Matthews v. Beard, No. 11-221, 2012 WL 2192225, at *5 (W. D. Pa. June 14, 2012) (citing Burkholder v. Newton, 116 Fed.Appx. 358, 360 (3d Cir. 2004)).  "[V]erbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation."  Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997).  Further, "an officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation."  Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999).  Without more, racially discriminatory statements, racial slurs and epithets—while unprofessional and deplorable—do not establish liability under Section 1983.  See Matthews, 2012 WL 2192225, at *5.

Plaintiff only alleges that DeBonis made such deplorable comments and spoke to Hotoke management about ABC rules.  He fails to produce any evidence that DeBonis purposefully deprived him of any other right or continually harassed him.  Instead, even accepting plaintiff's view of the facts, DeBonis warned Hotoke of a possible ABC violation, as per his job duties, and the restaurant canceled his event.  This may well have been accompanied by unprofessional comments, but this does not constitute a constitutional violation under Section 1983.  In the absence of additional evidence of a constitutional deprivation, the Court will grant defendants' separate motions for summary judgment as to an equal protection claim based on the February 2008 events.

### 5. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). While plaintiff's Section 1983 claims fail to survive summary judgment without turning to qualified immunity analysis, the Court will address the applicability of the defense as it further reinforces the grant of summary judgment as to the federal law claims.

DeBonis's job duties included applying and enforcing the ABC statutes—a job which necessarily tasked him with interpreting the various provisions in the ABC Handbook. (See dkt. entry no. 39, Br. in Opp'n to Mot. to File Third Am. Compl., Ex. A.) One such statute prohibited licensed facilities from having employees or promoters with criminal records. (See id.) Knowing that plaintiff had a criminal record, when DeBonis discovered that plaintiff was promoting an event at Hotoke, he informed the restaurant's management that a possible ABC violation could occur from Hotoke allowing plaintiff to promote the February 21, 2008 event. (See id.)

Plaintiff is correct that he has a statutory right to contract, free from the interference of state action. (See Pl.'s Br. in Opp'n to Summ. J. at 15–17.) Despite this right, there is no evidence that DeBonis knew that he was impermissibly violating this right by informing the restaurant of a possible ABC violation due to plaintiff's criminal record. As the enforcement arm of the ABC statutes, DeBonis—and others similarly employed—possess discretionary authority to interpret the statutes and enforce them. Such discretionary functions performed by government officials do not give rise to civil liability. Harlow, 457 U.S. at 818. This is especially the case when a government official interprets a state statute in a rational way. Even if DeBonis's interpretation of "promoter"

14

as written in the ABC statute was incorrect as plaintiff would have the Court believe, it was not without merit or so clearly erroneous as to indicate malicious intentions.  Thus, plaintiff failed to satisfy the requirements to defeat qualified immunity, and DeBonis is entitled to the defense. Defendant Caputo would similarly be entitled to qualified immunity as plaintiff failed to articulate an argument defeating the defense.

### 6. The City of New Brunswick

Municipalities face liability in Section 1983 actions "only in limited circumstances."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 688–89 (1978); see also Johnson v. City of Newark, No. 05-1305, 2006 WL 3827428, at *9 (D.N.J. Dec. 28, 2006).  In order for such liability to attach, a plaintiff must demonstrate that an official custom or policy, as dictated by a municipal officer, led to plaintiff's constitutional deprivation.  Johnson, 2006 WL 3827428, at *9.  Such action occurs when a municipal officer issues an official proclamation, policy, or edict.  Id. (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1999)).

Plaintiff failed to identify any such custom or policy, mandated by an officer of the City of New Brunswick, which would support Section 1983 liability against the municipality.  As such, the Court will grant defendants' separate motions for summary judgment insofar as they address federal claims against the City of New Brunswick.

## B. State Law Claims

The only claims remaining herein allege state law causes of action.  Plaintiff states various grounds for relief under New Jersey state law, including malicious prosecution and negligence. (See Second Am. Compl. at ¶ 48.)  The Court, having granted the separate motions for summary judgment as to the federal law claims, will decline to exercise supplemental jurisdiction over the

remaining state law claims.  The Court will dismiss those claims without prejudice, providing plaintiff with the opportunity to reinstate those claims in state court, if he so chooses, within 30 days of entry of the corresponding Order and Judgment.  See 28 U.S.C. § 1367(c), (d).

## V.     CONCLUSION

For these reasons, the separate motions for summary judgment will be granted as to the Section 1983 claims and denied as to the state law claims.  Further, the Court will dismiss the remaining state law claims without prejudice, pursuant to 28 U.S.C. § 1367(c), (d), allowing plaintiff to reinstate those claims in state court within 30 days.  The Court will issue an appropriate Order and Judgment.

   s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated: February 6, 2015